1
2
3
4
5
6
7
8
9
10
11

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FEDERAL TRADE COMMISSION and THE PEOPLE OF THE STATE OF CALIFORNIA,<br><br>　　　　　　　　　Plaintiffs,<br><br>　　　v.<br><br>YGRENE ENERGY FUND INC.,<br>　　　　　　　　　Defendant. | Case No.: 2:22-CV-07864 SB (SKx)<br><br>**STIPULATED AMENDED ORDER FOR PERMANENT INJUNCTION, MONETARY JUDGMENT, AND OTHER RELIEF** |

Plaintiffs, the Federal Trade Commission ("Commission") and the People of the State of California, by Attorney General Rob Bonta ("California"), filed their Complaint for Permanent Injunction, Monetary Relief, and Other Relief ("Complaint"), pursuant to Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b; California's Unfair Competition Law, Business and Professions Code § 17200, *et seq*.; and California's False Advertising Law, Business and Professions Code § 17500, *et seq*. Plaintiffs and Defendant Ygrene Energy Fund Inc. stipulate to the entry of this Stipulated Order for Permanent

Injunction, Monetary Judgment, and Other Relief to resolve all matters in dispute in this action between them.

THEREFORE, IT IS ORDERED as follows:

**FINDINGS**

1.     This Court has jurisdiction over this matter.

2.     The Complaint charges that Defendant participated in deceptive and unfair acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. § 45(a), (n), the Mortgage Acts and Practices – Advertising Rule, Regulation N, 12 C.F.R. Part 1014, California's Unfair Competition Law, Business and Professions Code § 17200, *et seq*., and California's False Advertising Law, Business and Professions Code § 17500, *et seq*. in connection with the marketing and sale of residential Property Assessed Clean Energy financing.

3.     Defendant neither admits nor denies any of the allegations in the Complaint, except as specifically stated in this Order.  Only for purposes of this action, Defendant admits the facts necessary to establish jurisdiction.

4.     Defendant waives any claim that it may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action through the date of this Order, and agrees to bear its own costs and attorney fees.

5.     Defendant and Plaintiffs waive all rights to appeal or otherwise challenge or contest the validity of this Order.

**DEFINITIONS**

For the purpose of this Order, the following definitions apply:

A.     "**Avoidance Action**" means any cause of action to avoid or recover a transfer of property of the **Defendant** or an interest of the **Defendant** in property, including, without limitation, actions arising under Bankruptcy Code sections 542, 543, 544, 545, 547, 548, 549, 550, 551, 553(b), and any other applicable federal, state, or common law.

B.      "**Clear(ly) and Conspicuous(ly)**" means that a required disclosure is difficult to miss (i.e., easily noticeable) and easily understandable by ordinary consumers, including in all of the following ways:

1.      In any communication that is solely visual or solely audible, the disclosure must be made through the same means through which the communication is presented.  In any communication made through both visual and audible means, such as a television advertisement, the disclosure must be presented simultaneously in both the visual and audible portions of the communication even if the representation requiring the disclosure is made in only one means.

2.      A visual disclosure, by its size, contrast, location, the length of time it appears, and other characteristics, must stand out from any accompanying text or other visual elements so that it is easily noticed, read, and understood.

3.      An audible disclosure, including by telephone or streaming video, must be delivered in a volume, speed, and cadence sufficient for ordinary consumers to easily hear and understand it.

4.      In any communication using an interactive electronic medium, such as the Internet or software, the disclosure must be unavoidable.

5.      The disclosure must use diction and syntax understandable to ordinary consumers and must appear in each language in which the representation that requires the disclosure appears.

6.      The disclosure must comply with these requirements in each medium through which it is received, including all electronic devices and face-to-face communications.

7.      The disclosure must not be contradicted or mitigated by, or inconsistent with, anything else in the communication.

8.      When the representation or sales practice targets a specific audience, such as children, the elderly, or the terminally ill, "ordinary consumers" includes reasonable members of that group.

1    C.    "**Commission**" means the Federal Trade Commission.

2    D.    "**Consumer Complaint**" includes any communication received directly

3    or indirectly from a consumer or from a consumer's authorized third-party

4    representative, a law enforcement agency, a Better Business Bureau, or a local

5    government or taxing authority that expresses a consumer's dissatisfaction or

6    objection, or refers to a problem the consumer has experienced, including but not

7    limited to any demand or request for a refund.  The term also includes any

8    communication that **Defendant** categorizes as a complaint for any purpose.

9    E.    "**Contract for Residential PACE Financing**" or "**Contract**" means

10   any contract that sets out terms for the provision of **Residential PACE Financing**

11   to a consumer, including but not limited to any agreement that is titled or which

12   **Defendant** calls a "Unanimous Approval Agreement," "Financing Agreement," or

13   "Agreement to Pay Assessments and Finance Qualifying Improvement."

14   F.    "**Contractor(s)**," or "**Enrolled Home-Improvement Contractor(s),**"

15   refers to any business, entity, organization, or natural person that performs home-

16   improvement services, and—

17       1.    which **Defendant** has enrolled in **Defendant's Residential PACE**

18             **Financing** or to which **Defendant** has given approval to market,

19             advertise, make reference to, promote, solicit customers for, offer for

20             sale, or sell **Defendant's Residential PACE Financing**;

21       2.    to which **Defendant**, after the date of this Order, disburses any funds,

22             directly or indirectly, in connection with any home-improvement

23             project that **Defendant** has approved for **PACE Financing**, excluding

24             instances in which **Defendant** disburses funds directly to the

25             consumer; or

26       3.    which, after the date of this Order, a customer of **Defendant** identifies

27             to **Defendant**, before execution of a **Contract** for **Residential PACE**

28             **Financing**, as the business, entity, organization, or person the customer

1             selected as the contractor for the project that **Defendant** has approved

2             for **PACE Financing**.

3       G.     "**Defendant**" means Ygrene Energy Fund Inc. and its successors and

4 assigns.

5       H.     "**Defendant's Initial Report**" means the report described in Section

6 VI.D.3 of this Order.

7       I.     "**Defendant's Supplemental Report**" means the report described in

8 Section VI.D.4 of this Order.

9       J.     "**Due Date for Defendant's Initial Report**" means the 60th day after

10 the **Notification Date**.

11       K.     "**Due Date for Defendant's Supplemental Report**" means the 45th day

12 after the **Survey Due Date.**

13       L.     "**Due Date for Settlement Administrator's Initial Report**" means the

14 30th day after the **Due Date for Defendant's Supplemental Report**.

15       M.     "**Eligible Consumer(s)**" refers to consumers identified as eligible to

16 receive lien relief pursuant to Section VI of this Order, including (a) each

17 **Potentially Eligible Consumer** whose eligibility **Defendant** declines or fails to

18 challenge pursuant to Section VI.D of this Order, and (b) each **Potentially**

19 **Eligible Consumer** whose eligibility is upheld by the **Settlement Administrator**

20 pursuant to Section VI.

21       N.     "**Eligibility Survey**," or "**Survey**," means the eligibility survey that

22 **Defendant** is required to mail pursuant to Section VI.A.

23       O.     "**Escrow Agent**" means Rust Consulting, Inc.

24       P.     "**Escrowed Funds**" refers to the three million dollars ($3,000,000)

25 that **Defendant** is required to put into escrow as set forth in Section XI of this

26 Order.

27       Q.     "**Estimated Cost Date**" means the date on which Plaintiffs'

28 representatives advise **Defendant** that there is concurrence as to **Estimated**

1  **Release Costs**, as described in Section VI.I.3 of this Order.

2       R.     "**Estimated Release Costs**" means the estimated costs to

3  **Defendant**, excluding **Notice and Settlement Administration Costs**, of

4  releasing the liens of all **Eligible Consumers**, as described in Section VI.I of this

5  Order.  Estimated costs are anticipated to include, without limitation, an estimate

6  of any costs that **Defendant** is required to incur to remove the **PACE** liens of

7  **Eligible Consumers** from a securitization pool, subject to approval by the

8  **Plaintiffs'** representatives pursuant to Section VI.I of this Order.

9       S.     "**Estimated Settlement Statement**" means any document that

10  **Defendant** titles or refers to as such, and any other document that seeks a

11  property owner's confirmation that the work of a **Contractor** related to a

12  **Contract for Residential PACE Financing** took place.

13       T.     "**Follow-up Letter**" means the letter described in Section VI.E that

14  the **Settlement Administrator** is required to send to **Potentially Eligible**

15  **Consumers** whose eligibility for lien relief **Defendant** challenges.

16       U.     "**Follow-up Letter Due Date**" means the 31st day after the **Follow-**

17  **up Letter** is sent pursuant to Section VI.E.

18       V.     "**Good Cause**" as it is used in Section II.C means good cause to

19  believe that the **Contractor** has violated any aspect of the policy regarding

20  prohibited conduct described in Section II.A.

21       W.     "**Grace Period**" means the period of time starting on the 31st day

22  after the **Notification Date** and ending on the **Survey Due Date**, pertaining to the

23  time allowed for consumers to respond to the **Eligibility Survey**.

24       X.     "**Initial Identification and Production Date**" means the 35th day

25  after the **Notification Date**.

26       Y.     "**Lien Review Committee**" means the committee defined in Section

27  VI.C.2 of this Order.

28

Z.    "**Notice and Settlement Administration Costs**" means the costs and expenses of providing consumer notice, the costs and expenses of the **Settlement Administrator**, and **Defendant**'s own costs and expenses of complying with this Order, including, without limitation, compensation for employees, contractors, and vendors; clerical expenses; and legal fees.

AA.    "**Notification Date**" means the date on which **Defendant** mails out the **Notification Letters** and **Surveys** as required by Sections V.A and VI.A.

BB.    "**Notification Letter(s)**" means the letters described in Section V of this Order, the template for which is set forth in Attachment A.

CC.    "**PACE**" means Property Assessed Clean Energy.

DD.    "**PACE Financing**" means financing to cover the costs of home improvements that results in a tax assessment on the real property of the consumer.

EE.    "**Potentially Eligible Consumers**" means the persons designated based on **Survey** responses and on a review of company records, as described in Section VI.C of this Order.

FF.    "**Prepayment Penalty**" means any fee, charge, penalty, or obligation collected or sought to be collected in connection with the full or partial payment of principal on **Residential PACE Financing** before its maturity date. This does not include any third-party processing or recording fees.

GG.    "**Residential PACE Financing**" means **PACE Financing** provided wholly or in part, directly or indirectly, by **Defendant** for a residential project, improvement, or service.

HH.    "**Right to Cancel Notice**" means the notice described in Section X of this Order.

II.    "**Settlement Administrator**" means Rust Consulting, Inc.

JJ.    "**Settlement Administrator's Initial Report**" means the report described in Section VI.G.5 of this Order.

KK.    "**Settlement Administrator's Final Report**" means the report

1   described in Section VI.H.5–6 of this Order.

2      LL.   "**Supplemental Identification and Production Date**" means the

3   15th day after the **Survey Due Date**.

4      MM.   "**Survey**" means **Eligibility Survey**.

5      NN.   "**Survey Due Date**" means the 60th day after the **Notification Date**.

6

7          **I.    PROHIBITION AGAINST MISREPRESENTATIONS**

8      IT IS ORDERED that **Defendant**, **Defendant**'s officers, agents, employees,

9   and attorneys, and all other persons in active concert or participation with any of

10  them, who receive actual notice of this Order, whether acting directly or indirectly,

11  in connection with the advertising, marketing, promoting, offering for sale, or sale

12  of **Residential PACE Financing** to consumers, are permanently restrained and

13  enjoined from misrepresenting, expressly or by implication, or assisting others in

14  misrepresenting any of the following:

15      A.     that the repayment obligation or lien that results from using

16  **Residential PACE Financing** will transfer to the next owner in the event the

17  consumer sells the property;

18      B.     the likelihood that the repayment obligation or lien that results from

19  using **Residential PACE Financing** will transfer to the next owner in the event the

20  consumer sells his or her real property;

21      C.     that consumers who obtain **Residential PACE Financing** will not

22  have to pay off the remaining balance before selling or refinancing the consumer's

23  real property;

24      D.     the likelihood that a consumer who obtains **Residential PACE**

25  **Financing** will have to pay off the remaining balance before selling or refinancing

26  the consumer's real property;

27      E.     that obtaining **Residential PACE Financing** will not create any

28  obstacles to, or interfere with, a consumer's ability to sell or refinance the

consumer's real property;

F.    that the consumer's real property will not be used as collateral to secure **Residential PACE Financing**, or that a lien will not be placed or recorded against the consumer's real property; or

G.    any other fact material to consumers concerning **Residential PACE Financing**, including but not limited to: the total costs; likely or possible cost savings; any material restrictions, limitations, or conditions; or any material aspect of its nature or central characteristics.

Provided, however, that nothing in this Section shall be construed to prohibit **Defendant** from making statements that are required by federal, state, or local disclosure laws.

## II. RESTRICTIONS RELATED TO HOME-IMPROVEMENT CONTRACTORS

IT IS ORDERED that, within 30 days after the entry of this Order, **Defendant** shall:

A.    Implement and strictly enforce a policy that prohibits **Enrolled Home-Improvement Contractors** from:

1.    Making any misrepresentations relating to **Residential PACE Financing**, including but not limited to making any misrepresentation that:

a.    the repayment obligation or lien that results from using **Residential PACE Financing** will transfer to the next owner in the event the consumer sells his or her real property;

b.    consumers who obtain **Residential PACE Financing** will not have to pay off the remaining balance before selling or refinancing the consumer's real property;

c.    obtaining **Residential PACE Financing** will not

1    create any obstacles to, or interfere with, a consumer's
2    ability to sell or refinance the consumer's real
3    property; or
4    d.    the consumer's real property will not be used as
5    collateral to secure **Residential PACE Financing**, or
6    that a lien will not be placed or recorded against the
7    consumer's property;
8    2.    Advising or suggesting to any consumer, in connection with any
9    application or any other communication with **Defendant**, that
10   the consumer submit as the consumer's email address an email
11   address that is controlled by or was created by the **Contractor**;
12   3.    Taking any action to manifest a consumer's or residential property
13   owner's consent to or review of any document relating to
14   **Residential PACE Financing** (including without limitation any
15   **Contract for Residential PACE Financing** or any application
16   therefor), or consent to or review of any terms in any such
17   document, including without limitation clicking on any spot for a
18   consumer's signature or initials on any DocuSign or other
19   electronic document, or otherwise applying or creating any
20   signature that appears to be a consumer's signature on any
21   document relating to **Residential PACE Financing**, including but
22   not limited to any **Contract for Residential PACE Financing**;
23   and
24   4.    Submitting any consumer's application for **Residential**
25   **PACE Financing** without the express, informed consent of
26   the consumer.
27   Provided, however, that implementing and strictly enforcing the policy
28   described in this Section II.A shall not, for purposes of interpreting or enforcing this

- 10 -

Order, be construed as creating an agency relationship between **Defendant**—including its officers, agents, employees, and attorneys—and any **Contractor**.

      B.     Send a written notice to each **Enrolled Home-Improvement Contractor** advising the **Contractor** that **Defendant** has adopted and will strictly and expeditiously enforce the policy required by Section II.A.

          1.     With respect to each currently enrolled **Contractor, Defendant** shall send such notice within 30 days following entry of this Order.  With respect to each newly enrolled **Contractor**, **Defendant** shall send such notice immediately upon enrolling the **Contractor**.  **Defendant** shall not approve any application for **Residential PACE Financing** unless **Defendant** has received the **Contractor**'s acknowledgment that the **Contractor** received the required notice.

          2.     After sending the initial notice required by Section II.B.1, **Defendant** shall send the notice required by Section II.B to each **Contractor** annually for as long as the **Contractor** is authorized to promote or solicit customers for **Residential PACE Financing**.

      C.     Closely monitor the conduct of each **Enrolled Home-Improvement Contractor**, as well as the conduct of anyone known by **Defendant** to be under the **Contractor**'s control, for compliance with the policy described in Section II.A, and strictly and expeditiously enforce each provision of such policy.  As part of its obligation to monitor **Contractors** and ensure that they are not violating such policy, **Defendant** shall, without limitation, do the following:

          1.     Promptly and completely investigate each **Consumer Complaint** and each legal action, as well as each inquiry from a government agency, that **Defendant** receives after the date of this Order (whether received directly or through a third party) regarding

- 11 -

**Consumer Complaints** or legal actions that allege that the **Contractor** misled a consumer in connection with the marketing or sale of **Residential PACE Financing** or forged the consumer's signature on any document or otherwise signed a document without the consumer's authorization.

2. With respect to each project for which the **Contractor** is to receive funds from **Residential PACE Financing** after the date of this Order, communicate with the customer, before the project is funded, and, during this communication:

   a. take reasonable steps and maintain reasonable policies to ensure that the communication is with the property owner and not the **Contractor** or its representative;

   b. inquire as to whether the email address to which **Defendant** caused the **Contract for Residential PACE Financing** to be sent belonged to the consumer and was not created by the **Contractor**; and

   c. inquire as to whether the consumer personally signed the **Contract for Residential PACE Financing**.

3. With respect to each project for which the **Contractor** receives funds from **Residential PACE Financing** after the date of this Order, send a letter to the consumer asking the consumer to inform **Defendant** about any complaints or concerns that the consumer has about the conduct of the **Contractor**, and asking the consumer to state whether the project was completed on the date shown in **Defendant's** records. The letter shall be sent within 10 days after the **Contractor** completes the project, shall be addressed to the consumer at the address where the project was performed, and shall include contact information that the

- 12 -

consumer may use to respond, including a mailing address, email address, and telephone number, which **Defendant** shall monitor to ensure that it reviews all responses promptly upon receipt. Nothing else shall be included with the letter, including but not limited to marketing messages.

4.    Create a report every 120 days ("**120 Day Report**") which shows the following with respect to projects in those 120 days for which the **Contractor** received **Residential PACE Financing**:

a.    the number of projects where the customer was aged 65 or older;

b.    the number of projects where **Defendant** provided any documents or disclosures to the consumer in Spanish or any other language, and

c.    the average amount of time between the date on which the **Contract for Residential PACE Financing** was approved and the date on which the project was certified as complete.

5.    Promptly review the information in the **120 Day Reports** for purposes of determining whether there is **Good Cause** and whether the **Contractor** should receive a warning letter or be terminated pursuant to Section II.C.6 or II.C.7 of this Order.

6.    Promptly send a warning letter to the **Contractor**, and obtain proof of receipt, in the event that **Defendant** receives information that provides **Defendant Good Cause** to believe that the **Contractor** has violated any aspect of the policy regarding prohibited conduct described in Section II.A.  Such warning letter shall inform the **Contractor** of the suspected violation and advise the **Contractor** that the **Contractor** will be subject to termination should **Defendant** obtain any additional information giving

- 13 -

**Defendant** cause to believe that the **Contractor** has violated any aspect of **Defendant**'s policies. If **Defendant** fails to send the **Contractor** a warning letter within 10 calendar days after obtaining **Good Cause, Defendant** shall, instead of sending a warning letter, immediately terminate the **Contractor**.

7. Immediately terminate a **Contractor** for subsequent suspected violations, in accordance with the following:

   a. If **Defendant** receives information, after having sent a warning letter to the **Contractor**, that provides **Defendant Good Cause**, **Defendant** shall immediately terminate the **Contractor**.

   b. **Defendant's** determination of **Good Cause** may include a reasonable opportunity of up to 10 calendar days to investigate.

   c. In terminating a **Contractor**, **Defendant** shall permanently rescind, and refrain thereafter from granting, approval and authorization for the terminated **Contractor** to market, advertise, make reference to, promote, solicit customers for, offer for sale, or sell **Defendant's Residential PACE Financing**. **Defendant** shall not provide any funding to such **Contractor** for any new projects going forward. Provided, however, that if such **Contractor** has not previously been terminated, **Defendant** may reinstate such **Contractor** if **Defendant** conducts a diligent investigation and determines: (a) the violation was not caused by an owner, principal, officer, director, or LLC manager or member of the **Contractor**, but by an employee, agent, or representative of the **Contractor**, and (b) **Defendant**

confirms that the **Contractor** has taken sufficient steps to ensure that such employee, agent, or representative is permanently barred from marketing, advertising, making reference to, promoting, soliciting customers for, offering for sale, or selling **Defendant**'s **Residential PACE Financing**.  Such investigation must include, without limitation, a review of all **Defendant**'s project management files relating to other projects performed by the **Contractor**.  **Defendant** shall document all such efforts and maintain such documentation pursuant to Section XVII of this Order.

d.   With respect to any **Contractor** who must be terminated under this Order:  In the event **Defendant** has previously authorized the **Contractor** to proceed with a project that has not been completed, **Defendant** is not required to withdraw its authorization for such project.  However, **Defendant** shall, prior to funding any such project, contact the property owner directly for each such project and shall refrain from causing any lien to be recorded in connection with the financing—or promptly release any lien that has already been recorded—unless **Defendant** obtains verifiable confirmation from the consumer establishing that (1) the consumer knowingly signed a finance contract with **Defendant**, and (2) the consumer was previously aware that a first-priority lien would be recorded against the consumer's property for the amount of the financing.  **Defendant** shall document all such efforts and maintain

1   such documentation pursuant to Section XVII of this

2   Order.

3       D.   Refrain from causing a consumer's real property to be used as collateral

4   to secure the financing of any project unless (1) **Defendant** has first put in place

5   reasonable policies that are calculated to ensure that the project was completed, and

6   has followed such policies, and (2) the consumer whose project is being financed has

7   provided to **Defendant** the consumer's informed and express affirmation that the

8   **Contractor** has completed the project.

### III. PROHIBITION AGAINST PROVIDING DECEPTIVE INFORMATION, SERVICES, OR MATERIALS

11      IT IS FURTHER ORDERED that **Defendant**, directly or through any

12  corporation, subsidiary, division, trade name, or other device, in connection with

13  the advertising, marketing, promoting, offering for sale, or sale of **Residential**

14  **PACE Financing**, shall not provide to others any information, services, or

15  materials, including any advertising, promotional, or training materials, that include

16  any misrepresentations described in Section I of this Order, or that instructs or

17  otherwise encourages anyone to make any such misrepresentations to consumers.

### IV. PROHIBITION AGAINST USING PROPERTY AS COLLATERAL WITHOUT CONSUMERS' EXPRESS, INFORMED CONSENT

20      IT IS FURTHER ORDERED that **Defendant**, **Defendant**'s officers, agents,

21  employees, and attorneys, and all other persons in active concert or participation

22  with any of them, who receive actual notice of this Order, whether acting directly or

23  indirectly, are restrained and enjoined from causing a consumer's property to be used

24  as collateral to secure **Residential PACE Financing** without having obtained the

25  consumer's express, informed consent.  To obtain a consumer's express, informed

26  consent:

27      A.   **Defendant** must **Clearly and Conspicuously** disclose to the

28  consumer that, by accepting financing:

- 16 -

1.    the consumer's home will be used as collateral to secure the total amount of the financing to be received;

2.    a lien will be recorded against the consumer's property; and

3.    this lien will take first priority over other liens, including existing and subsequent first mortgage liens; and

B.    **Defendant** must obtain a consumer's signature immediately adjacent to, and acknowledging receipt of, such disclosure, and must ensure that the signature was applied personally by the consumer whose property is at issue, and that it was not applied by an **Enrolled Home-Improvement Contractor**.

## V.    NOTIFICATION TO PREVIOUS FINANCING RECIPIENTS

IT IS FURTHER ORDERED that

A.    **Defendant** shall, within 30 days after the entry of this Order, mail a **Notification Letter** to all consumers who have received **Residential PACE Financing** at any time between January 1, 2015 and the date of entry of this Order, inclusive, with the exception of consumers whose liens have been released such that the consumer's property is no longer subject to a lien from **Defendant's Residential PACE Financing**.  Provided, however, that **Defendant** is not required to send a **Notification Letter** to a consumer if the consumer, prior to the date of entry of this Order, has entered into a written settlement agreement with **Defendant** that releases claims related to a contention by the consumer that the consumer did not sign the **Contract** relating to that project.  All **Notification Letters** shall be sent on the same day.

1.    **Defendant** shall send the **Notification Letter** by prepaid first-class mail to the consumer's last known address, and, if different from the consumer's last known address, to the property that is subject to the **Contract for Residential PACE Financing**.

2.      If the consumer received **Residential PACE Financing** for more than one home-improvement project, **Defendant** shall send a separate letter for each such project.

3.      Within three business days after the **Notification Date**, **Defendant** shall provide Plaintiffs' undersigned counsel via secure file transfer a spreadsheet with the property address and other contact information for all the consumers who have received **Residential PACE Financing** at any time between January 1, 2015 and the date of entry of this Order, and all consumers to whom **Defendant** has sent the **Notification Letter** required by this Section, as well as an electronic copy of each **Notification Letter** that **Defendant** sent.  **Defendant** shall include a letter advising Plaintiffs what is included in the spreadsheet.

B.      The **Notification Letter** required by this Section shall be printed in both English and Spanish and shall conform in form and substance to the template set forth in Attachment A, or as approved in writing by the Plaintiffs or their designees.

1.      The **Notification Letter** shall, **Clearly and Conspicuously**:

a.      refer to this lawsuit and state that the letter is being sent as part of the agreement to settle the case;

b.      state that the consumer received financing from **Defendant** for a home-improvement project;

c.      indicate the amount of the financing, the date on which funding occurred, the **Contractor** to which the financed funds were paid, and the date on which the term of the financing ends;

d.      state that the consumer's home is being used as collateral to secure the financing, and that a first-priority lien has been recorded against the consumer's property;

- 18 -

e.    state that, in the event the consumer decides to sell or refinance his or her home, there is a substantial likelihood that the consumer will first need to remove the lien by paying off the outstanding balance;

f.    state that, in the event the consumer decides to remove the lien by paying off the outstanding balance on the financing before the end of the financing term, the lien might still remain on the public record for a significant amount of time, which will possibly delay the consumer's ability to sell or refinance; and

g.    state whether or not the consumer will be subject to a **Prepayment Penalty** or premium if the consumer pays off the balance of the financing early.

2.    The **Notification Letter** shall also advise the consumer that an **Eligibility Survey** is enclosed and provide instructions for completing and submitting the **Survey**, in accordance with Section VI.A below.

C.    With the exception of the **Survey** described in Section VI.A below, **Defendant** shall not include anything else in or with the **Notification Letter**, including without limitation billing statements or marketing messages.

## VI.    LIEN RELIEF

IT IS FURTHER ORDERED that, for purposes of redressing injury resulting from the conduct described in Count II of the Complaint in this action, **Defendant** shall provide relief to **Eligible Consumers**, as set forth in Sections VI.J and XI of this Order.

As set forth in Paragraphs A–I of this Section VI, the **Settlement Administrator** shall oversee the determination of which consumers shall be considered **Eligible Consumers**, and the determination of which liens shall be

- 19 -

subject to relief under this Section.  These determinations shall be made based on the results of a survey and on a review of **Defendant**'s records, pursuant to Paragraphs A–I of this Section VI.  This process, which shall be governed by Paragraphs A–I of this Section VI, includes, without limitation:

- sending an **Eligibility Survey** to consumers;
- an initial designation of **Potentially Eligible Consumers**;
- the opportunity for **Defendant** and consumers to provide to the **Settlement Administrator** additional evidence relevant to the issue of whether such consumers personally signed the **Contract for Residential PACE Financing** under which **Defendant** provided financing; and
- a final determination by the **Settlement Administrator** setting forth which of the **Potentially Eligible Consumers** shall be considered **Eligible Consumers**.

As further set forth below, **Eligible Consumers** shall be eligible to receive a release of the lien(s) that **Defendant** caused to be recorded against the consumer's property, or, alternatively, in certain circumstances, a monetary payment.

Deadlines and due dates set forth in this Section are subject to modification upon written approval by Plaintiffs or their designees, without the necessity of Court approval.

A.     Eligibility Survey

1.     With each **Notification Letter** required by Section V of this Order, **Defendant** shall include an **Eligibility Survey** ("**Survey**") for each recipient to complete.

2.     The **Survey** shall be printed in both English and Spanish and shall substantially conform to the template attached hereto as Attachment B, or as approved in writing by Plaintiffs or their designees.  A copy of the **Contract for Residential PACE Financing** that applies to the project for which **Defendant**

provided **Residential PACE Financing** shall be included with the **Survey**.  As reflected in Attachment B to this Order, questions asking for the following information shall be included in the **Survey**:

    (a)    whether the consumer remembers the home-improvement project for which **Defendant** provided **Residential PACE Financing**;

    (b)    whether the consumer signed the enclosed **Contract for Residential PACE Financing**, or authorized someone else to sign on the consumer's behalf;

    (c)    whether the consumer has ever entered into any agreement with **Defendant**;

    (d)    whether the consumer recognizes the email address to which **Defendant** caused the **Contract for Residential PACE Financing** to be sent for the consumer's signature upon **Defendant's** approval of the consumer's application for financing; and

    (e)    whether the consumer authorized **Defendant** to communicate with the consumer using that email address.

3.    The **Notification Letter** that accompanies the **Survey** shall also:

    (a)    advise the recipients that they need to mail or otherwise submit their responses within 30 days, and notify the recipients of the due date, with the same due date for all recipients;

    (b)    advise the recipients that they have the option of responding to the **Survey** by mail, using an enclosed envelope, which **Defendant** shall include with the **Notification Letter**, addressed to **Defendant**'s mailing address;

- 21 -

(c)   advise the recipients that they also have the option of responding to the **Survey** online, and shall provide a website URL and easily understood instructions for consumers to provide their responses online;

(d)   provide a website URL for consumers to obtain and print a copy of the **Survey**, a link to which shall also be included on the home page for the online **Survey**; and

(e)   advise consumers that they should affirm, under penalty of perjury, that their responses are true and correct.

B.   <u>Processing of Survey Responses</u>

1.   **Defendant** shall ensure that all **Survey** responses received by **Defendant** remain secure and that the originals remain available to Plaintiffs for inspection and copying.  **Defendant** shall make available copies of all **Survey** responses promptly upon request.

2.   **Defendant** shall review and consider all signed responses it receives by, or that are placed in the mail by, the **Survey Due Date,** which reflects a 30-day **Grace Period** after the due date specified in the **Notification Letter**.

a.   If a consumer submits a response by mail without a signature, or without affirming that the responses are true and correct, **Defendant** shall, by the end of the 5th business day following the **Survey Due Date**, send a letter to the consumer that **Clearly and Conspicuously** notifies the consumer of the nature of the deficiency and the opportunity to correct it.

(1)   The subject line of the letter shall read "Ygrene Survey Results: Please Sign."

(2)    The letter shall specify a mailing address for the consumer to use to return documents, and shall also **Clearly and Conspicuously** provide a website URL and easily understood instructions for consumers to provide their **Survey** responses online and provide a website URL for consumers to obtain and print a copy of the **Survey**.

(3)    **Defendant** shall allow consumers at least until the end of the 7th calendar day following **Defendant**'s mailing of the deficiency letter to correct the deficiency.  The **Survey** responses of all recipients who correct deficiencies shall be considered timely and valid.

b.    To the extent **Defendant** receives **Survey** responses that were completed or supplemented more than 35 days after the **Notification Date**, **Defendant** shall provide to Plaintiffs and the **Settlement Administrator** copies of all such paper and electronic **Survey** responses by the **Supplemental Identification and Production Date**.

3.    Failure by a consumer to submit **Survey** responses in a timely manner shall not constitute (a) evidence in any other proceeding that forgery of the consumer's signature or impersonation did not occur, or (b) a waiver of any claims in any other legal proceedings.  **Defendant** shall not make any argument in any other proceeding that is inconsistent with this provision.

C.     <u>Initial Review of Survey Responses and Designation by Defendant of Potentially Eligible Consumers</u>

    1.     Designation of consumers as **Potentially Eligible Consumers** shall be based on **Survey** responses and on a review of company records, as described below:

    a.     <u>Survey responses</u>:

Each of the following categories of **Survey** respondents shall be considered **Potentially Eligible Consumers** and shall be designated as such by **Defendant**:

(1)  **Survey** respondents who indicated in their responses that they did not sign the **Contract for Residential PACE Financing** included with the **Survey**, and

(2)  **Survey** respondents who indicated in their responses both of the following: (a) that they do not recall whether they signed the **Contract for Residential PACE Financing** included with the **Survey**, and (b) that they do not recognize the email address to which **Defendant** sent the **Contract**.

If a **Potentially Eligible Consumer** has responded to more than one **Survey**, regarding different projects, then, for each project, **Defendant** shall identify whether the consumer's responses for that project meet the above criteria.

    b.     <u>Review of company records</u>:

**Defendant** shall, by the **Survey Due Date**, diligently review its files and records and designate the following recipients of **Residential PACE Financing** as **Potentially Eligible Consumers**:

    (1)    all consumers whose liens have not been removed who have complained or have advised **Defendant** that the consumer never signed a **Contract for Residential PACE Financing**, and

    (2)    all consumers whose liens have not been removed who, according to **Defendant**'s records, have the same email address associated with more than one property address in **Defendant**'s records.

Provided, however, that **Defendant** need not designate any such consumers as **Potentially Eligible Consumers** if the consumer (a) completed and signed a **Survey** under penalty of perjury, and (b) checked responses on the **Survey** affirmatively indicating that the consumer had previously seen the Finance Agreement and that the consumer had either signed the Finance Agreement or authorized someone else to sign the Finance Agreement.

2.    **Defendant** may establish a **Lien Review Committee** to perform a review of the files under this Section VI of the Order.  To the extent that such committee acts on behalf of **Defendant** to perform its obligations under this Section of the Order, **Defendant** shall designate a qualified employee to coordinate and be responsible for the committee, who must be approved by and report directly to **Defendant**'s board of directors.  **Defendant** shall be responsible for the actions and decisions of any such committee.

3.    **Defendant** shall provide Plaintiffs with a list of all persons who qualify under Section VI.C.1.a–b of this Order as **Potentially Eligible Consumers** by the **Initial Identification and**

**Production Date**, and shall provide Plaintiffs with an updated list after the conclusion of the **Grace Period**, on the **Supplemental Identification and Production Date**.

D.    Opportunity to Challenge Eligibility

1.    Pursuant to the procedures set forth below in this Paragraph, **Defendant** will be allowed an opportunity to review its files related to each **Potentially Eligible Consumer** for purposes of deciding whether to challenge whether such consumer should be deemed an **Eligible Consumer** for lien relief.

a.    Challenges under this Paragraph shall be reviewed and resolved by the **Settlement Administrator**, as set forth below.  **Defendant** shall bear all responsibility for paying costs and charges of the **Settlement Administrator** associated with performing its duties under this Order. Plaintiffs shall not be responsible for, and shall not be billed for, any costs or charges of the **Settlement Administrator**, nor shall funds held in escrow pursuant to Section XI of this Order be used to pay any costs or charges of the **Settlement Administrator**.

b.    **Defendant** shall not challenge a **Potentially Eligible Consumer**'s eligibility for relief under this Order unless, after diligent review of its files, **Defendant** has concluded in good faith that the consumer personally signed **Defendant**'s **Contract for Residential PACE Financing** (or knowingly and expressly authorized someone else to sign on the consumer's behalf), and that the consumer understood that, when applying or authorizing his or her signature, the consumer was signing a finance agreement.

c. Each **Potentially Eligible Consumer** shall without any further action be deemed an **Eligible Consumer** in the event **Defendant**, after conducting a review of its records, fails to properly challenge such designation in a timely manner, as set forth below.

2. To challenge the eligibility of any **Potentially Eligible Consumer** for lien relief under this Order, **Defendant** shall, in **Defendant's Initial Report** or **Supplemental Report**, described below, identify all such **Potentially Eligible Consumers** whom **Defendant** contends should not be considered **Eligible Consumers**.

3. Defendant's Initial Report: **Defendant** shall provide the **Settlement Administrator** and Plaintiffs with an initial report ("**Defendant's Initial Report**") on the **Due Date for Defendant's Initial Report**. As set forth in Section VI.D.4 below, **Defendant** shall subsequently submit a supplemental report ("**Defendant's Supplemental Report**") that will address the potential eligibility of **Survey** respondents who respond during the **Grace Period**.

a. **Defendant** shall include in **Defendant's Initial Report** a spreadsheet that includes a separate record for each **Potentially Eligible Consumer** identified to date, regardless of whether **Defendant** challenges the eligibility of such consumer for lien relief. For each consumer, **Defendant** shall include a field that identifies the reason(s) that the person qualifies as **Potentially Eligible** (referring back to the criteria set forth above in Section VI.C.1).

b. To challenge the eligibility of any **Potentially Eligible Consumer** who responded to the **Survey** within 30 days after the

- 27 -

**Notification Date, Defendant's Initial Report** must include all of the following for each different project related to such consumer:

(1)     A written statement setting forth and explaining the basis for **Defendant**'s good-faith contention that the consumer personally signed **Defendant**'s **Contract for Residential PACE Financing** relating to the project at issue (or knowingly and expressly authorized someone else to sign on the consumer's behalf), and that the consumer understood that, when applying or authorizing his or her signature, he or she was signing a finance agreement.  To be considered, the explanation must include citations to documents on which **Defendant** relied, using hyperlinks where feasible, so that such documents can be easily found and reviewed by the **Settlement Administrator**; and

(2)     the following documents and information, in electronic format if feasible, to the extent **Defendant** possesses such documents and information:

(a)  the consumer's application for financing;

(b)  a **Contract for Residential PACE Financing** relating to the consumer that bears a signature with the consumer's name;

(c)  a signed **Estimated Settlement Statement** that appears to bear the consumer's signature, if an **Estimated Settlement Statement** was obtained from the consumer;

(d)  if the **Contract for Residential PACE Financing** was signed electronically, **Defendant**'s basis, if any, for believing that the consumer personally signed the **Contract**, or authorized someone to sign on the consumer's behalf;

(e)  for electronically signed **Contracts for Residential PACE Financing**, a statement of whether the email address to which the **Contract** was sent out for the consumer's signature was associated with any other projects that **Defendant** authorized for financing, identifying each such project and the names and addresses of the property owners associated with such projects;

(f)  a recording of a "confirmation of terms call" or "welcome call," along with a notation of the date and time on which the call was made, and whether it was made after the time stamp on the **Contract for Residential PACE Financing**, if such a recording was made;

(g)  any written complaints or communications received from the consumer alleging impersonation or that the consumer never signed a finance agreement, and any documents that **Defendant** reviewed in evaluating these complaints;

(h)  the disciplinary history and pattern of complaints, if any, of the **Contractor** that **Defendant** authorized to perform the project at issue;

(i)  a spreadsheet with **Defendant**'s YODA file, or comparable project management file, for the consumer; and

(j)  any additional documents cited in **Defendant**'s written statement challenging the consumer's eligibility.

(3)   For each category of items listed in Subsection (2) above for which **Defendant** does not possess responsive documents and information, **Defendant's Initial Report**

shall expressly state that **Defendant** does not possess responsive documents and information.

4. <u>Defendant's Supplemental Report</u>:  After reviewing responses from consumers who respond to the **Survey** during the **Grace Period**, **Defendant** shall provide the **Settlement Administrator** and Plaintiffs **Defendant's Supplemental Report** by the **Due Date for Defendant's Supplemental Report**.  To challenge the eligibility of any consumer who responds to the **Survey** during the **Grace Period**, **Defendant's Supplemental Report** shall include the information and documents set forth in Sections VI.D.3.a–b above relating to **Defendant's Initial Report**.

E. <u>Follow-up Letter to Consumers</u>

1. Within 10 days after receiving **Defendant's Initial Report**, the **Settlement Administrator** shall send a letter ("**Follow-up Letter**"), on joint Federal Trade Commission and California letterhead, to all **Potentially Eligible Consumers** whose eligibility for lien relief **Defendant** has challenged in **Defendant's Initial Report** in conformance with the procedures described in Sections VI.D.1–3 above.  **Defendant** shall bear the cost of sending the letter.  The purpose of the **Follow-up Letter** is to allow the consumer the opportunity to provide information and documents relevant to the issue of whether the consumer personally signed the **Contract for Residential PACE Financing** and understood that it was a finance contract.  Within 10 days after receiving **Defendant's Supplemental Report**, the **Settlement Administrator** shall send a **Follow-up Letter** to all **Potentially Eligible Consumers** identified in **Defendant's**

**Supplemental Report** whose eligibility for lien relief **Defendant** has challenged.

    (a)    The **Follow-up Letters** shall be sent by email to each **Potentially Eligible Consumer** who provided an email address on his or her response to the **Survey**.

    (b)    For all other **Potentially Eligible Consumers**, the **Follow-up Letters** shall be sent by First Class U.S. mail, with a return envelope provided.

2.    The **Follow-up Letter** shall be printed in both English and Spanish and shall conform in substance to the template set forth in Attachment C, or as approved in writing by Plaintiffs or their designees.  For each consumer, if **Defendant** has challenged the eligibility for lien relief as to more than one project, a separate **Follow-up Letter** shall be sent regarding each such project and shall identify the date and nature of the project at issue and the **Contractor** that performed the services.

    (a)    The **Follow-up Letter** shall inform consumers that, after review of the consumer's **Survey** responses and **Defendant**'s records, **Defendant** believes that the consumer is not eligible to receive any relief in connection with the recording of the **PACE** lien against the consumer's property.

    (b)    The **Follow-up Letter** shall further inform consumers that:

(1) **Defendant** believes that the consumer personally signed the enclosed contract to receive **PACE Financing** from **Defendant** to finance the project (or,

- 31 -

if such is the case, that the consumer knowingly and expressly authorized someone else to sign on the consumer's behalf), and

(2) that **Defendant** believes that the consumer understood that the document that the consumer signed was a finance agreement.

(c)    A copy of the **Contract for Residential PACE Financing** shall be included with the **Follow-up Letter**.  **Defendant** and the **Settlement Administrator** shall undertake due diligence to avoid sending a different consumer's **Contract** to any consumer.

(d)    The **Follow-up Letter** shall ask consumers to state, under penalty of perjury, whether they personally signed (or authorized someone else to sign) the **Contract**, either electronically or by ink signature.

(e)    The **Follow-up Letter** shall invite consumers to provide information and documents relevant to the issue of whether the consumer personally signed the **Contract** (or authorized someone else to sign it) and whether the consumer understood at the time of signing that the document was a finance agreement.

(f)    The **Follow-up Letter** shall advise consumers that, for their responses to be considered, they need to respond within 21 calendar days after the sending of the letter, specifying the date; and

(g)    The **Follow-up Letter** shall provide a website URL under the control of the **Settlement Administrator**

for consumers to submit their responses.  The URL shall include an active hyperlink in letters that are sent out to consumers by email.  The **Follow-up Letter** shall also include a mailing address for consumers to mail responses to the **Settlement Administrator**.

3.  In reviewing **Defendant**'s challenges, as described below, the **Settlement Administrator** shall consider the responses of all consumers who respond to the **Follow-up Letter** by the **Follow-up Letter Due Date**, which includes a 10-day grace period.

F.  <u>Opportunity for Plaintiffs to Respond to Defendant's Challenges</u>

Within 14 days after the **Follow-up Letter Due Date**, Plaintiffs may provide information and argument for the **Settlement Administrator**'s consideration as to whether any of the **Potentially Eligible Consumers** should be deemed eligible for lien relief under this Order.  Plaintiffs' election not to provide input or analysis permitted under this Section shall not be deemed to reflect Plaintiffs' agreement with any contention of **Defendant** concerning a consumer's eligibility for lien relief, or to waive any right of Plaintiffs or of any consumer.

G.  <u>Initial Determination by Settlement Administrator of Eligibility for Lien Relief</u>

**The Settlement Administrator** shall review all challenges by **Defendant** regarding eligibility for lien relief under this Order and make determinations as to eligibility, as set forth below.

1.  With respect to each **Potentially Eligible Consumer** whose eligibility has been challenged by **Defendant**, the factual issue to be resolved by the **Settlement Administrator** is whether the consumer personally signed the **Contract for Residential PACE**

- 33 -

**Financing** (or expressly authorized someone else to sign on the consumer's behalf), or, instead, whether someone else, such as a **Contractor**, signed the **Contract** (without the consumer's express authorization). The **Settlement Administrator** will uphold **Defendant**'s challenge to a **Potentially Eligible Consumer**'s eligibility if and only if the **Settlement Administrator** finds that it is more likely than not that the consumer personally signed the **Contract for Residential PACE Financing** (or expressly authorized someone else to sign on the consumer's behalf). If the **Settlement Administrator** does not make such finding as to any **Potentially Eligible Consumer**, the consumer shall be considered an **Eligible Consumer**.

2.  To make the required determinations, the **Settlement Administrator** shall review the information and documents listed below as to each **Potentially Eligible Consumer** whose eligibility for lien relief **Defendant** has challenged in accordance with the requirements of this Order. The **Settlement Administrator** may reject the **Defendant**'s challenge as to any consumer's eligibility in the event **Defendant** fails to provide any of these documents:

(a)  **Defendant's Initial and Supplemental Reports**, including **Defendant**'s written statement and the documents **Defendant** has provided;

(b)  consumers' responses to the **Survey**;

(c)  any additional information and documents that the consumer provided in response to the request for additional information in the **Follow-up Letter**; and

(d)  any information and arguments provided by Plaintiffs pursuant to Section VI.F.

The **Settlement Administrator** may also take into account the allegations in Plaintiffs' Complaint as background in analyzing whether the signature on the **Contract for Residential PACE Financing** was applied by someone impersonating the consumer. The **Settlement Administrator** may also consider, at its discretion, whether the lack of a response by a recipient of the **Follow-up Letter** described above supports **Defendant**'s assertion that the consumer personally signed (or authorized someone else to sign) the **Contract**.

3. The **Settlement Administrator** may take the following additional steps:

   (a) The **Settlement Administrator** may request, and **Defendant** shall timely provide, any additional information or records in **Defendant**'s files that the **Settlement Administrator** believes would assist in its review.

   (b) The **Settlement Administrator** may contact consumers as it deems necessary to obtain clarification or additional information.

4. To the extent a consumer has provided additional information in response to the **Follow-up Letter** that indicates that the consumer did not sign the **Contract for Residential PACE Financing**, the **Settlement Administrator** shall take into account whether or not **Defendant** has produced documents or evidence that is inconsistent with the consumer's narrative.

5. On or before the **Due Date for Settlement Administrator's Initial Report**, the **Settlement Administrator** shall provide counsel for Plaintiffs and **Defendant** a spreadsheet and a report ("**Settlement Administrator's Initial Report**").

a.    The **Settlement Administrator's Initial Report** shall clearly lay out the **Settlement Administrator**'s eligibility determination with respect to each consumer whose eligibility for lien relief **Defendant** has challenged.  The **Settlement Administrator** shall attempt to accommodate all reasonable requests from the parties regarding organization of the data and for clarification of any of the contents of the Report.

b.    If **Defendant** challenges more than one lien for any given consumer, the **Settlement Administrator's Initial Report** shall separately lay out the **Settlement Administrator**'s determination with respect to each lien.

c.    The eligibility status of each **Potentially Eligible Consumer** who responded to the **Survey**, and each consumer who was deemed a **Potentially Eligible Consumer** pursuant to Section VI.C.1.b above, shall be included in the **Settlement Administrator's Initial Report**.

H.    <u>Opportunity to Appeal the Settlement Administrator's Initial Determinations</u>

1.    **Defendant** may appeal any determination by the **Settlement Administrator** overruling any challenge that **Defendant** had made.  Plaintiffs may appeal any determination made by the **Settlement Administrator** that upholds or overrules any challenge that **Defendant** made.

2.    All appeals must be submitted to the **Settlement Administrator** and served on the other party by the end of the 14th day after the

- 36 -

**Settlement Administrator** issues the **Settlement Administrator's Initial Report.**

3.  For each determination raised on appeal, the standard for review will be whether the **Settlement Administrator** committed clear error in reaching the conclusion at issue.

4.  Each party may submit a reply to any challenge from the other party.  Any reply must be submitted and served within 7 days after receipt of the other party's appeal.

5.  The **Settlement Administrator** shall review and consider the parties' appeals using a "clear error" standard.  The **Settlement Administrator** may overturn a determination in the **Settlement Administrator's Initial Report** only if, upon review, the **Settlement Administrator** concludes that the determination is unsupported by substantial, credible evidence.  The **Settlement Administrator** shall issue its final conclusion as to each lien in question in a final report ("**Settlement Administrator's Final Report**"), as set forth below, which shall be issued within 21 days after the deadline for submitting appeals.  The parties shall consider and seek to accommodate any request by the **Settlement Administrator** for a reasonable extension.

6.  The **Settlement Administrator's Final Report**

    a.  The **Settlement Administrator's Final Report** shall be provided to Plaintiffs and **Defendant**, and shall update and revise the **Settlement Administrator's Initial Report** to reflect the **Settlement Administrator**'s resolutions of all appeals.

    b.  The **Settlement Administrator's Final Report** shall clearly identify all consumers who are **Eligible Consumers**,

and, as to each, shall identify each lien that is eligible for relief.  In identifying **Eligible Consumers**, the **Settlement Administrator's Final Report** shall identify:

(1) all consumers whom **Defendant** identified as **Potentially Eligible Consumers** and whose eligibility **Defendant** did not challenge;

(2) all consumers whom **Defendant** identified as **Potentially Eligible Consumers** and whose eligibility **Defendant** attempted to challenge but which attempted challenged failed to meet the requirements under this Order for submitting a challenge; and

(3) all consumers whose eligibility **Defendant** challenged whom the **Settlement Administrator** determined should nonetheless be deemed eligible for lien relief under this Order.

c. The **Settlement Administrator** shall attempt to accommodate all reasonable requests from the parties regarding organization of the data and for clarification of any of the contents of the Report.

d. The determinations of the **Settlement Administrator** as reflected in the **Settlement Administrator's Final Report** shall be considered final and no further appeals following the **Settlement Administrator's Final Report** shall be allowed.

I. Determination of Form of Lien Relief

1. Within 14 days after the issuance of the **Settlement Administrator's Final Report** identifying all **Eligible**

- 38 -

**Consumers**, **Defendant** shall, with respect to each eligible lien, determine the following information, which **Defendant** shall provide to Plaintiffs and the **Settlement Administrator** in spreadsheet format: (i) the initial amount of each **Eligible Consumer**'s **Residential PACE Financing**; (ii) the outstanding balance on each **Eligible Consumer**'s **Residential PACE Financing**; and (iii) **Defendant**'s **Estimated Release Costs**.

2. Plaintiffs' representatives shall promptly review **Defendant's Estimated Release Costs**. Plaintiffs' representatives may request the assistance of the **Settlement Administrator** in this review. **Defendant** shall, upon Plaintiffs' request, promptly provide additional documents and information necessary to explain and support **Defendant**'s estimates.

3. After review of **Defendant**'s **Estimated Release Costs**, Plaintiffs' representatives shall inform **Defendant** whether Plaintiffs' representatives agree that **Defendant**'s **Estimated Release Costs** reasonably approximate the actual costs, excluding **Notice and Settlement Administration Costs**, of releasing all **Eligible Consumers**' liens, which agreement shall not be unreasonably withheld. The parties shall work cooperatively to address any disputes concerning these issues. The amount of the agreed-upon estimated costs will determine the form of lien relief that must be provided under this Section, as set forth in Paragraph J, below.

J. <u>Provision of Lien Relief</u>

1. In the event the **Estimated Release Costs**, as agreed to by Plaintiffs' representatives on the **Estimated Cost Date**, are less than or equal to $3 million, then **Defendant** shall, within 30 days after the **Estimated Cost Date**, effectuate the release of the liens,

and any associated assessments and debt, of all **Eligible Consumers**.

    a.    To effectuate the release of each eligible lien of **Eligible Consumers**, **Defendant** shall, within 21 days after the **Estimated Cost Date**, cause to be filed a notice of release with the recorder's office where such lien is recorded and shall take any and all additional action necessary to effectuate the release of the lien.

    b.    The **Escrow Agent** may use **Escrowed Funds** pursuant to Section XI of this Order to effectuate these releases. **Defendant** may not use **Escrowed Funds** to pay **Notice and Settlement Administration Costs**.  Within 35 days after the **Estimated Cost Date**, the **Escrow Agent** shall transfer to the **Commission** any **Escrowed Funds** remaining in the escrow account that were not used to effectuate lien relief pursuant to Section VI.J.1, consistent with Sections XI and XII of this Order.

    c.    **Defendant** shall, in coordination with the **Settlement Administrator**, promptly notify **Eligible Consumers** of the relief they are being provided under this Section VI.J.1. **Defendant** may not condition any consumer's receipt of relief on the waiver of any right or legal claim.

    2.    In the event the **Estimated Release Costs,** as agreed to by Plaintiffs' representatives on the **Estimated Cost Date**, exceed $3 million, the **Escrow Agent** shall, within 7 days after the **Estimated Cost Date**, transfer all of the **Escrowed Funds** to the **Commission**, to be used to provide monetary relief for **Eligible Consumers**, consistent with Sections XI and XII of this Order.

K.   <u>Third-Party Claims</u>:  Nothing in this Order, including but not limited to any consumer's receipt of, or eligibility for, lien relief as determined under this Section, shall have precedential or preclusive effect as to any claim or issue asserted by any third party in any other proceeding.

L.   <u>Inadvertent Failure to Release Liens in a Timely Manner</u>:  In the event **Defendant** learns from a consumer or by another means that a lien that is required by this Order to be released has not been released, **Defendant** shall cause to be filed, within 3 business days of obtaining such information, a notice of release with the recorder's office where such lien is recorded and take any additional action necessary to effectuate the release of the lien.

## VII.  PROHIBITION AGAINST PREPAYMENT PENALTIES

IT IS FURTHER ORDERED that **Defendant**, **Defendant**'s officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are permanently enjoined from (1) sending to any consumer for signature, or executing, any **Contract for Residential PACE Financing** that includes a provision under which the consumer could be charged a **Prepayment Penalty**, or (2) charging, causing to be charged, or collecting, directly or indirectly, any **Prepayment Penalty** in connection with any **Contract for Residential PACE Financing** that is executed on or after the date of entry of this Order.

## VIII.  REQUIRED NOTICE FOR NEW CUSTOMERS

IT IS FURTHER ORDERED that, within 7 calendar days of the date **Defendant** receives a **Contract for Residential PACE Financing** executed by a consumer subsequent to the date of the entry of this Order, **Defendant** will provide that consumer with (1) a paper copy of the fully executed **Contract for Residential PACE Financing**, and (2) a Notice that substantially conforms to the template set forth in Attachment D.  Provided, however, with respect to consumers whose **Contracts** are executed within the first 23 days after the date of entry of this Order,

**Defendant** shall provide the paper copy of the **Contract** and the Notice by no later than the 30th calendar day after the date of entry of this Order.

    A.    **Defendant** shall send these items by first-class mail to the consumer's last known address and, if different from the consumer's last known address, to the real property that is subject to the **Contract for Residential PACE Financing**.

    B.    The Notice required by this Section shall:

        1.    **Clearly and Conspicuously** inform the consumer:

            a.    that **Defendant** has received the consumer's signature on a contract for financing;

            b.    that a copy of the contract for the financing is included for the consumer's reference;

            c.    that the financing is being provided to fund a home-improvement project;

            d.    the amount expected to be financed by **Defendant** to the consumer;

            e.    the name, address, and telephone number of the **Contractor** to which the financed funds are expected to be paid;

            f.    the interest rate of the financing;

            g.    the term of the financing;

            h.    that the consumer's real property will be used as collateral to secure the financing and, as a result, a first-priority lien will be recorded against the consumer's real property;

            i.    that, in the event the consumer decides to sell or refinance his or her home, there is a substantial likelihood that the consumer will first need to remove the lien by paying off the outstanding balance;

            j.    that, in the event the consumer decides to remove the lien by paying off the outstanding balance on the financing

before the end of the financing term, the lien might still remain on the public record for a significant amount of time, which will possibly delay the consumer's ability to sell or refinance the real property; and

    k.    a telephone number and email address that the consumer can use to contact **Defendant**;

  2.  Not include anything, including without limitation billing statements or marketing messages, in or with the Notice other than the Notice set forth in Attachment D; and

  3.  Be printed in both English and Spanish, conforming to the template set forth in Attachment D.

## IX.  WAITING PERIOD AFTER CONSUMER SIGNATURE

IT IS FURTHER ORDERED that, in communicating to any **Contractor** or consumer **Defendant**'s approval of any project for **Residential PACE Financing**, **Defendant** shall **Clearly and Conspicuously** state that **Defendant** does not authorize the **Contractor** to begin any work, and that the **Contractor** shall not begin work, on the consumer's real property until (a) at least 72 hours have passed after **Defendant** has confirmed with the consumer **Defendant**'s receipt of the consumer's signature on the **Contract for Residential PACE Financing**, or (b) the expiration of any applicable federal, state, or local law granting the consumer a right to cancel the home-improvement contract, whichever is later (the "**Waiting Period**").  Using this calculation, **Defendant** shall specify the earliest date and time at which the **Contractor** may commence work on the consumer's real property.

Provided, however, that **Defendant** may shorten or waive the **Waiting Period** for reasons of exigency, emergency, or necessity, if and only if (a) **Defendant** has good cause to believe that the contract is executed to make emergency or immediately necessary repairs to protect persons or real or personal property; (b) the consumer has provided express, informed consent to shorten or waive the **Waiting**

**Period**; and (c) **Defendant** complies with all applicable federal, state, or local laws.  In the event **Defendant** finds good cause to shorten the **Waiting Period**, **Defendant** shall obtain from the **Contractor** all documents relating to the determination that the circumstances allow a shortening or waiver of the **Waiting Period**.

## X.  NOTIFICATION OF RIGHT TO CANCEL PACE CONTRACT

IT IS FURTHER ORDERED that, with respect to each **Contract for Residential PACE Financing**:

A.    **Defendant** shall provide to consumers, in a separate document, a notice ("**Right to Cancel Notice**") that **Clearly and Conspicuously** explains the consumer's right to cancel the **Contract** under applicable local, state, or federal law. This provision is not intended to supersede or replace any local, state, or federal requirements relating to the provision to consumers of a right to cancel or notification of such rights.  **Defendant** shall remain subject to any local, state, or federal law or regulation relating to the provision to consumers of a right to cancel.

B.    <u>Timing</u>:

1.    **Defendant** shall provide the **Right to Cancel Notice** concurrently with the form for the **Contract for Residential PACE Financing** any time that the form is presented to or made available to the consumer for the consumer's signature. The **Right to Cancel Notice** shall be presented **Clearly and Conspicuously**.

2.    **Defendant** shall, immediately upon receipt of consumers' signatures on a **Contract for Residential PACE Financing**, email a separate **Right to Cancel Notice** to all signatories on the **Contract** for whom **Defendant** has an email address.  The email shall include "Notice of Your Right to Cancel" in the subject line of the email and shall not in any way obfuscate the purpose or nature of the email.  To help ensure that consumers understand the

subject of the Notice, a copy of the **Contract** shall be attached separately to the email.

## XI.  MONETARY JUDGMENT

IT IS FURTHER ORDERED that:

A.    Judgment in the amount of Twenty-Two Million Dollars ($22,000,000) is entered in favor of Plaintiffs against Defendant Ygrene Energy Fund Inc., as monetary relief.

B.    Upon signing of this Order, **Defendant** shall transfer Three Million Dollars ($3,000,000) to Rust Consulting, Inc., which, as **Defendant** stipulates, is being held in escrow with Rust Consulting, Inc. as **Escrow Agent** for no purpose other than payment to the **Commission** or payment of **Estimated Release Costs**, as set forth in Section VI of this Order ("Lien Relief").  These funds ("**Escrowed Funds**") shall be disbursed at the conclusion of the process for determining eligibility for lien relief that is set forth in Section VI of this Order.  The requirement of how **Escrowed Funds** shall be disbursed is set forth in Section VI.  All disbursements to be made to the **Commission** pursuant to Section VI shall be made by electronic fund transfer in accordance with instructions previously provided by a representative of the **Commission**.

C.    Upon **Defendant**'s (1) full satisfaction of all obligations to provide Lien Relief as required under Section VI.J, and/or (2) transfer of funds to the **Commission** as required under Section VI.J, the remainder of the judgment shall be suspended, subject to Subsections XI.D–G below.

D.    Plaintiffs' agreement to the suspension of part of the judgment is expressly premised upon the truthfulness, accuracy, and completeness of **Defendant**'s sworn financial statement and related documents (collectively, "financial representations") submitted to Plaintiffs, namely:

1.  the Financial Statement of Corporate Defendant Ygrene Energy Fund Inc. signed by John Apostle, Secretary and General Counsel, on May 26, 2022;

2.  the updated Financial Statement of Corporate Defendant Ygrene Energy Fund Inc. signed by John Apostle, Secretary and General Counsel, on August 3, 2022; and

3.  the additional information and documentation submitted by email from **Defendant**'s counsel Jon Direnfeld to **Commission** counsel John Jacobs, Robert Quigley, and/or Karina Layugan, dated:

    a.  5/24/2022 at 7:09 pm PT;

    b.  5/25/2022 at 5:59 pm PT;

    c.  6/1/2022 at 5:49 pm PT;

    d.  6/2/2022 at 2:37 pm PT;

    e.  6/14/2022 at 11:08 am PT;

    f.  6/14/2022 at 3:09 pm PT;

    g.  6/21/2022 at 7:45 am PT;

    h.  6/24/2022 at 12:23 pm PT;

    i.  7/29/2022 at 11:09 am PT;

    j.  8/3/2022 at 4:19 pm PT;

    k.  8/12/2022 at 11:06 am PT; and

    l.  8/30/2022 at 9:15 am PT.

E.  In the event that a bankruptcy petition or similar insolvency proceeding is filed by or against **Defendant** before **Defendant** has fully satisfied its obligations to effectuate lien relief as required by Section VI.J, and the **Commission**'s beneficial interest in any then-remaining **Escrowed Funds** is extinguished in whole or in part as a result of an **Avoidance Action** or any similar action or proceeding, the full amount of the Judgment shall become immediately due and owing to the **Commission**.

F.      The suspension of the judgment will be lifted if, upon motion by either Plaintiff, the Court finds that **Defendant** failed to disclose any material asset, materially misstated the value of any asset, or made any other material misstatement or omission in the financial representations identified above.

G.      If the suspension of the judgment is lifted, the judgment becomes immediately due in the amount specified in Subsection A above (which the parties stipulate only for purposes of this Section represents the consumer injury alleged in the Complaint), less any payment previously made pursuant to this Section, plus interest computed from the date of entry of this Order.

## XII.  ADDITIONAL MONETARY PROVISIONS

IT IS FURTHER ORDERED that:

A.      **Defendant** relinquishes dominion and all legal and equitable right, title, and interest in all assets transferred pursuant to this Order and may not seek the return of any assets.

B.      The facts alleged in the Complaint will be taken as true, without further proof, in any subsequent civil litigation by or on behalf of either Plaintiff, including in a proceeding to enforce its rights to any payment or monetary judgment, such as a nondischargeability complaint in any bankruptcy case.

C.      The facts alleged in the Complaint establish all elements necessary to sustain an action by either Plaintiff pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), and this Order will have collateral estoppel effect for such purposes.

D.      **Defendant** acknowledges that its Taxpayer Identification Number (Employer Identification Number), which **Defendant** previously submitted to the **Commission**, may be used for collecting and reporting on any delinquent amount arising out of this Order, in accordance with 31 U.S.C. §7701.

E.      All money paid to the **Commission** pursuant to Sections VI.J and XI.B of this Order may be deposited into a fund administered by the **Commission** or its

1  designee to be used for consumer redress and any attendant expenses for the
2  administration of any redress fund.  If a representative of the **Commission** decides
3  that direct redress to consumers is wholly or partially impracticable or money remains
4  after redress is completed, the **Commission** may apply any remaining money for such
5  other relief (including consumer information remedies) as it determines to be
6  reasonably related to **Defendant**'s practices alleged in the Complaint.  Any money
7  not used for such relief is to be deposited to the U.S. Treasury.  **Defendant** has no
8  right to challenge any actions the **Commission** or its representatives may take
9  pursuant to this Subsection.

10                              **XIII.  COOPERATION**

11           IT IS FURTHER ORDERED that **Defendant** must fully cooperate with
12  representatives of Plaintiffs in this case and in any investigation related to or
13  associated with the transactions or the occurrences that are the subject of the
14  Complaint.  **Defendant** must provide truthful and complete information, evidence,
15  and testimony.  **Defendant** must cause its officers, employees, representatives, or
16  agents to appear for interviews, discovery, hearings, trials, and any other proceedings
17  that Plaintiffs may reasonably request upon 5 days written notice, or other reasonable
18  notice, at such places and times as Plaintiffs' representatives may designate, without
19  the service of a subpoena.

20                          **XIV.  CUSTOMER INFORMATION**

21           IT IS FURTHER ORDERED that **Defendant**, **Defendant**'s officers, agents,
22  employees, attorneys, and all other persons or entities in active concert or
23  participation with any of them, who receive actual notice of this Order, are
24  permanently restrained and enjoined from failing to provide sufficient customer
25  information to enable the **Commission** to efficiently administer consumer redress.
26  **Defendant** represents that it has provided this redress information to the
27  **Commission**.  If a representative of either Plaintiff requests in writing any
28

information related to redress, **Defendant** must provide it, in the form prescribed by such Plaintiff, within 14 days.

## XV.  ORDER ACKNOWLEDGMENTS

IT IS FURTHER ORDERED that **Defendant** obtain acknowledgments of receipt of this Order:

A.   Within 7 days of entry of this Order, **Defendant** must submit to Plaintiffs an acknowledgment of receipt of this Order sworn under penalty of perjury.

B.   For 10 years after entry of this Order, **Defendant** must deliver a copy of this Order to:

       1.   all principals, officers, directors, and LLC managers and members;

       2.   all employees having managerial responsibilities for, and all agents and representatives who participate in:

            a.   advertising, marketing, promoting, offering for sale, or sale of **Residential PACE Financing** to consumers of **PACE Financing**;

            b.   recruiting or training **Contractors** to advertise, make reference to, promote, solicit customers for, offer for sale, or sell **Defendant**'s **Residential PACE Financing** (including without limitation regional account managers); or

            c.   customer service; and

       3.   any business entity resulting from any change in structure as set forth in Section XVI ("Compliance Reporting").  Delivery must occur within 7 days of entry of this Order for current personnel. For all others, delivery must occur before they assume their responsibilities.

C.      From each individual or entity to which **Defendant** delivered a copy of this Order, **Defendant** must obtain, within 30 days, a signed and dated acknowledgment of receipt of this Order.

## XVI.  COMPLIANCE REPORTING

IT IS FURTHER ORDERED that **Defendant** make timely submissions to Plaintiffs:

A.      One year after entry of this Order, **Defendant** must submit a compliance report, sworn under penalty of perjury.  **Defendant** must: (a) identify the primary physical, postal, and email address and telephone number, as designated points of contact, which representatives of Plaintiffs may use to communicate with **Defendant**; (b) identify all of the **Defendant**'s businesses by all of their names, telephone numbers, and physical, postal, email, and Internet addresses; (c) describe the activities of each business, including the goods and services offered, and the means of advertising, marketing, and sales; (d) describe in detail whether and how **Defendant** is in compliance with each Section of this Order; and (e) provide a copy of each Order Acknowledgment obtained pursuant to this Order, unless previously submitted to Plaintiffs.

B.      For 20 years after entry of this Order, **Defendant** must submit a compliance notice, sworn under penalty of perjury, within 14 days of any change in (a) any designated point of contact; or (b) the structure of the **Defendant** or any entity that **Defendant** has any ownership interest in or controls directly or indirectly that may affect compliance obligations arising under this Order, including: creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order.

C.      **Defendant** must submit to Plaintiffs notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against **Defendant** within 14 days of its filing.

D.    Any submission to Plaintiffs required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding: "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on: _____ " and supplying the date, signatory's full name, title (if applicable), and signature.

E.    Unless otherwise directed by a **Commission** representative in writing, all submissions to the **Commission** pursuant to this Order must be emailed to DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to: Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC  20580.  The subject line must begin:  Federal Trade Commission et al. v. Ygrene Energy Fund Inc.

F.    Unless otherwise directed by a California representative in writing, all submissions to California pursuant to this Order must be emailed to Rachel.Foodman@doj.ca.gov and Michele.VanGelderen@doj.ca.gov or sent by overnight courier to Michele Van Gelderen, California Department of Justice, 300 S Spring Street, Suite 1700, Los Angeles, CA 90013.

## XVII.  RECORDKEEPING

IT IS FURTHER ORDERED that **Defendant** must create certain records for 20 years after entry of the Order and retain each such record for 5 years.  Specifically, **Defendant** must create and retain the following records:

A.    accounting records showing the revenues from all goods or services sold;

B.    personnel records showing, for each person providing services, whether as an employee or otherwise, that person's: name; addresses; telephone numbers; job title or position; dates of service; and (if applicable) the reason for termination;

C.    all records necessary to demonstrate full compliance with each provision of this Order, including all submissions to Plaintiffs;

D.      a copy of each materially different advertisement or other marketing material, including but not limited to materially different advertisements or other marketing material referring to **Defendant** disseminated by **Enrolled Home-Improvement Contractors**;

E.      a copy of all materials that **Defendant** uses for pitching, recruiting, soliciting, training, vetting, and monitoring **Enrolled Home-Improvement Contractors**, including but not limited to all guidelines, instructions, PowerPoint slides, videos, brochures and handouts, regardless of whether such materials are provided to the **Contractor**;

F.      a copy of each unique version of forms made available to consumers to apply for financing;

G.      a copy of each unique version of consumer contracts or agreements;

H.      copies of any internal compliance policies and procedures concerning the subject matter of this Order;

I.      copies of any internal compliance reports concerning the subject matter of the Order, including any compliance cases, field examination surveys, and forensic testing results;

J.      records of all **Consumer Complaints** and refund requests**,** whether received directly or indirectly, such as through a third party, and any response;

K.      a log relating to **Defendant**'s compliance with Section II.C of this Order ("Restrictions Related to Home-Improvement Contractors"), which, without limitation, shall show the following:

1.      details of the actions taken to comply with the requirements in Section II.C.1 of this Order to investigate and respond to **Consumer Complaints**, legal actions, and government inquiries related to the **Contractor**, including the personnel who performed each such action and the date of each such action;

- 52 -

2.   all of the responses provided by customers of the **Contractor** in response to the communications made pursuant to Section II.C.2 of this Order, as well as the personnel who spoke to each customer and the date of each conversation; and

3.   all of the statements and information provided by customers of the **Contractor** in response to the letters sent pursuant to Section II.C.3 of this Order, as well as the date on which each letter was sent and each response was received;

L.   copies of any other documents created or maintained pursuant to, or in the course of complying with, Section II.C of this Order ("Restrictions Related to Home-Improvement Contractors");

M.   the following records relating to **Defendant**'s compliance with Section VI of this Order ("Lien Relief"):

1.   a spreadsheet or other electronic table that includes the names of all consumers identified as **Eligible Consumers**, which **Defendant** shall make available for *in camera* review if so ordered by the Court;

2.   a spreadsheet or other electronic table that includes the names of all **Eligible Consumers**, and which, for each consumer, shows, in separate fields, the following information:

a.   the date of each communication with a county recorder's office concerning the lien and the type of communication (e.g., call, email, or letter);

b.   the date on which any lien on the consumer's property was released, as applicable;

c.   the date on which the consumer was identified as an **Eligible Consumer**;

d. the date on which **Defendant** mailed the consumer the notice required by Section VI.J.1.c of this Order; and

e. the date of each communication with the consumer concerning the lien on the consumer's property and the type of communication (e.g., call, email, or letter); and

3. the following records for each **Eligible Consumer**:

a. a copy of the Notice of Release of Lien that **Defendant** caused to be filed with any recorder's office pursuant to Section VI.J.1.a of this Order;

b. a copy of each letter or other paper correspondence, and each email or other electronic communication, that was sent to or received from a recorder's office concerning release of any lien on the consumer's property; and

c. a copy of the letter that **Defendant** caused to be sent to the consumer pursuant to Section VI.J.1.c.

N. the following records for each consumer to whom **Defendant** sends or causes to be sent a **Contract for Residential PACE Financing**:

1. proof of mailing that verifies the date on which **Defendant** mailed the paper copy of the **Contract** with the consumer's signature, and the Notice to New Customers, as described by Section VIII of this Order;

2. a copy of the fully executed **Contract for Residential PACE Financing**, including all signatures that were obtained;

3. a copy of the Notice to New Customers that **Defendant** sent to the consumer pursuant to Section VIII of this Order;

4. records evidencing compliance with Section IX of this Order, including without limitation (a) communications with the consumer or **Contractor** regarding the date on which the

**Contractor** may begin work, and (b) all communications with the consumer constituting or otherwise relating to a request for a shortening or waiver of the **Waiting Period**;

5.     a copy of the **Right to Cancel Notice** that was provided to the consumer pursuant to Section X of this Order;

6.     records evidencing the receipt from the consumer, if applicable, of any notice of the consumer's intent or desire to cancel the **Contract**; and

7.     all records received from any county recorder reflecting any lien against the consumer's property.

O.     For each customer who, after the date of this Order, receives funding pursuant to a **Contract for Residential PACE Financing**, record(s) constituting the consumer's dated express affirmation that, prior to receiving funding, the **Contractor** completed the project to the consumer's satisfaction, as required by Section II.D of this Order, and records showing the funds that were paid out pursuant to the **Contract for Residential PACE Financing** were paid to an **Enrolled Home-Improvement Contractor** and not to a third party.

## XVIII. COMPLIANCE MONITORING

IT IS FURTHER ORDERED that, for the purpose of monitoring **Defendant**'s compliance with this Order, including any failure to transfer any assets as required by this Order:

A.     Within 14 days of receipt of a written request from a representative of either Plaintiff, **Defendant** must: submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce documents for inspection and copying. Plaintiffs are also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69, or by California law.

B.     For matters concerning this Order, Plaintiffs are authorized to communicate directly with **Defendant**. **Defendant** must permit representatives of Plaintiffs to interview any employee or other person affiliated with **Defendant** who has agreed to such an interview. The person interviewed may have counsel present.

C.     Plaintiffs may use all other lawful means, including posing, through their representatives as consumers, suppliers, or other individuals or entities, to **Defendant** or any individual or entity affiliated with **Defendant**, without the necessity of identification or prior notice. Nothing in this Order limits the Plaintiffs' lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1, or California Government Code § 11180, *et seq*.

## XIX. STATE COURT ENFORCEMENT

IT IS FURTHER ORDERED that, without limiting any other provisions of the Order, the California Attorney General shall have the authority to enforce or seek sanctions for violations of the Order independently in a court of general jurisdiction in its state. No approval from any other Plaintiff is required. **Defendant** consents to any such state court's jurisdiction for purposes of enforcing the terms of the Order.

## XX.  RETENTION OF JURISDICTION

IT IS FURTHER ORDERED that this Court retains jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

SO ORDERED, this 17th day of November, 2022



Hon. Stanley Blumenfeld, Jr.
United States District Judge

# ATTACHMENT A

ENGLISH

Notification Letter
**[Joint FTC – CA Letterhead]**

[Consumer Name]
[Address]

Important Information About a Lien Against Your Home
Survey Enclosed to Determine If You Are Eligible for Relief

Dear [Consumer]:

We are writing to let you know about a legal settlement between the Federal Trade Commission ("FTC"), the California Department of Justice ("California DOJ"), and Ygrene Energy Fund Inc. ("Ygrene"), a financing company that placed a lien against your property in connection with a home-improvement project.

To determine whether you may be eligible for relief from Ygrene as part of the settlement, please fill out the enclosed eligibility survey. If Ygrene has caused more than one lien to be recorded against your property, you will get a separate letter for each lien. Please fill out a separate survey for each lien.

**Why am I getting this notice?**

Ygrene's records show that:

- you received PACE ("Property Assessed Clean Energy") financing from Ygrene for a home-improvement project;
- there is currently a lien against your property for the amount that you owe on the financing;
- the financing payments you are required to make are being billed to you on your property tax bill; and
- your annual property taxes have therefore increased.

You can review the details of your financing and the lien in the attached questionnaire.

**Why did the FTC and the California DOJ sue Ygrene?**

The FTC and the California DOJ claim that Ygrene misrepresented important details about its PACE financing and that it failed to ensure that consumers had properly consented to the lien. In agreeing to settle with the FTC and the California DOJ, Ygrene neither admits nor denies any of the claims or allegations by the FTC or the California DOJ. The FTC and the California DOJ allege in their complaint that Ygrene engaged in deceptive practices by:

- telling people that they could sell their homes and transfer the outstanding balance of the financing from Ygrene to the buyer;
- telling people that Ygrene's financing would not interfere with their ability to sell or refinance their homes; and
- causing liens to be recorded against consumers' properties without the consumer's permission.

1

**You should also be aware that**:

- before you are able to sell your home or refinance your mortgage, there is a significant possibility that the lender will require that you first pay the balance of what you owe on the PACE financing to remove the lien;

- if you remove the lien by paying off the balance of what you owe, there may be a delay before the lien is removed from the public record, which could possibly delay your ability to refinance your mortgage or sell your home; and

- you {will/will not} have to pay a penalty for paying off the balance of what you owe before it is due.

**What do I need to do?**

      **Complete and submit the enclosed eligibility survey** by [insert deadline, 30 days from mailing date]. You can do this:

- Online, using your unique identification number. Go to [insert website] and type in your unique identification number, [insert identification number].  Submit your response by [insert deadline]; or

- By mail, using the enclosed form.  Mail your completed form, using the enclosed envelope, to:
  
        [Address]

        You may also obtain a copy of the form online at [insert URL].

You must respond by the deadline of **[INSERT DATE]**.  As noted on the form, your responses need to be affirmed under penalty of perjury.

If you have any questions about the process, please contact [        ] at [        ].

Sincerely,

[ADD SIGNATURE BLOCK]

# ATTACHMENT A

SPANISH

Carta de notificación
**[Joint FTC – CA Letterhead]**

[Consumer Name]
[Address]

Información importante sobre un gravamen registrado contra su casa
Cuestionario adjunto para determinar su elegibilidad para recibir alivio legal

Estimado(a) [Consumer]:

Nos dirigimos a usted para informarle sobre un acuerdo legal entre la Comisión Federal de Comercio ("FTC"), el Departamento de Justicia de California ("California DOJ") y Ygrene Energy Fund Inc. ("Ygrene"), una compañía de financiación que registró un gravamen contra su propiedad en relación con un proyecto de mejoras del hogar.

Para determinar si, como parte de este acuerdo, usted puede ser elegible para recibir alivio legal de Ygrene, por favor, complete el cuestionario de elegibilidad adjunto. Si Ygrene ha gestionado el registro de más de un gravamen contra su propiedad, recibirá una carta por separado para cada gravamen. Por favor, complete un cuestionario distinto por cada gravamen.

**¿Por qué estoy recibiendo este aviso?**

Los registros de Ygrene indican lo siguiente:

- Que usted recibió financiación PACE (Property Assessed Clean Energy) de parte de Ygrene para un proyecto de mejoras del hogar.
- Que actualmente hay un gravamen contra su propiedad por el monto que adeuda sobre esa financiación.
- Que los pagos de la financiación que está obligado a efectuar se le facturan a su cuenta del impuesto sobre la propiedad.
- Y que, por lo tanto, el monto de sus impuestos anuales sobre la propiedad ha aumentado.

Puede revisar los detalles de su financiación y del gravamen en el cuestionario adjunto.

**¿Por qué la FTC y el California DOJ demandaron a Ygrene?**

La FTC y el California DOJ afirman que Ygrene tergiversó detalles importantes sobre su financiación PACE y no se aseguró de que los consumidores expresaran debidamente su consentimiento con respecto al gravamen. La FTC y el California DOJ alegan en su demanda que Ygrene incurrió en prácticas engañosas al:

- Decirle a la gente que podía vender sus casas y que podía transferir el saldo pendiente de la financiación de Ygrene al comprador.
- Decirle a la gente que la financiación de Ygrene no interferiría con su habilidad de vender o refinanciar sus casas.
- Registrar gravámenes contra las propiedades de los consumidores sin contar con el permiso de éstos.

1

Al aceptar el acuerdo con la FTC, Ygrene no admite ni niega ninguno de los reclamos o alegaciones de la FTC.

**Usted también debe saber**:

- Que antes de poder vender su casa o de refinanciar su hipoteca, existe una alta probabilidad de que el prestador le exija que, para suprimir el gravamen, primero pague el saldo de lo que adeuda por la financiación PACE.

- Que, si se suprime el gravamen porque usted cancela el saldo adeudado, podría producirse una demora hasta que ese gravamen se elimine de los registros públicos, lo cual podría retrasar sus posibilidades de refinanciar su hipoteca o de vender su casa.

- Que usted {tendrá/no tendrá} que pagar una multa por cancelar el saldo que adeuda antes de la fecha establecida.

**¿Qué tengo que hacer?**

**Complete y envié el cuestionario de elegibilidad adjunto** antes del [insert deadline, 30 days from mailing date]. Puede hacerlo:

- En línea, usando su número único de identificación. Visite [insert website] e ingrese su número único de identificación, [insert identification number]. Envíe su respuesta antes de [insert deadline].

- O por correo postal usando el formulario adjunto. Envíe el formulario debidamente completado dentro del sobre que se adjunta a:

  [Address]

  También puede obtener una copia del formulario en línea en [insert URL].

Usted debe responder antes de la fecha límite de **[INSERT DATE]**. Tal como se indica en el formulario, sus respuestas deben afirmarse bajo pena de perjurio.

Si tiene alguna pregunta sobre el proceso, por favor comuníquese con [        ] llamando al [        ].

Atentamente,

[ADD SIGNATURE BLOCK]

# ATTACHMENT B

ENGLISH

**ELIGIBILITY SURVEY**

This survey asks questions about PACE financing you received from Ygrene for a specific home-improvement project. Your responses will help determine what further steps, if any, Ygrene might have to take in connection with the lien against your property.

**How to Complete This Survey**

**Step 1:** Review the Finance Agreement that's enclosed.

**Step 2:** Review the details of the financing and the home-improvement project listed below.

**Step 3:** Complete and return the survey. Follow the instructions below.

**Details about the financing and the home-improvement project**

Ygrene's records show the following details about the financing you received from Ygrene:

- Amount: [$]
- Date issued: [date]
- Financing Terms: [#] years at a [%] interest rate
- Final payment due: [date]
- Purpose of financing: home-improvements related to [type of project—e.g., installation of solar panels]
- Contractor's name: [name and address]
- Lien status: recorded with [name of recorder's office]
- Your email address:

**Survey Questions**

| |
|---|
| 1.  Do you remember the home-improvement project that is described above? |
| ☐  Yes<br>☐  No  {Please go to 1.a} |
| 1.a  If you answered "No" to Question 1, select all that apply<br>    ☐  I do not remember working with the contractor listed above.<br>    ☐  I do not remember starting or finishing the type of home-improvement project listed above <u>at any time</u>.<br>    ☐  I do not remember starting or finishing any type of home-improvement project <u>on or around [insert date above]</u>. |
| 2.  The Finance Agreement appears to have your signature.  Did you sign this Finance Agreement? |

4

| ☐ Yes, I signed it | ☐ I authorized someone to sign for me | ☐ No {Please go to 2.a} | ☐ I don't remember {Please go to 2.a} |
|---|---|---|---|
| 2.a. If you answered "No" or "I don't remember" to Question 2, please answer: Have you ever entered into any agreement at all with Ygrene? | | | |
| ☐ Yes | ☐ No | ☐ I don't remember | |
| 3. Do you recognize the email address listed above in the "Details about the financing" section of this survey? Please answer: | | | |
| ☐ Yes, this email address belongs to me | | ☐ No, this email address doesn't belong to me | |
| 4. Did you authorize Ygrene to communicate with you at this email address? | | | |
| ☐ Yes | | ☐ No | |

If you are mailing in your responses, please sign below to confirm your answers to this survey.

"I hereby declare under penalty of perjury that my answers to this survey are true and correct to the best of my knowledge."

_____     _____     _____
Print Your Name                    Your Signature                    Today's Date

After you have completed this form, please mail it by no later than [date] to the following address:

{Insert address}

**{Online form:}**

**By clicking "Submit," you agree to the following statement:**

**"I hereby declare under penalty of perjury that my answers to this survey are true and correct to the best of my knowledge."**

**Click here to sign and submit.**

5

# ATTACHMENT B

SPANISH

## CUESTIONARIO DE ELEGIBILIDAD

Este cuestionario contiene preguntas sobre la financiación PACE que usted recibió de parte de Ygrene para un proyecto específico de mejoras del hogar. Sus respuestas ayudarán a determinar qué otros pasos, si los hay, podría tener que seguir Ygrene en relación con el gravamen contra su propiedad.

**Cómo completar este cuestionario**

**Paso 1:** Revise el Acuerdo de financiación que se adjunta.

**Paso 2:** Revise los detalles de la financiación y del proyecto de mejoras del hogar que se listan más abajo.

**Paso 3:** Complete y devuelva el cuestionario. Siga las instrucciones indicadas a continuación.

**Detalles sobre la financiación y el proyecto de mejoras del hogar**

Los registros de Ygrene indican los siguientes detalles sobre la financiación que usted recibió de parte de Ygrene:

- Monto: [$]
- Fecha de otorgamiento: [date]
- Términos de la financiación: [#] años con una tasa de interés del [%]
- Fecha establecida para el pago final: [date]
- Propósito de la financiación: mejoras del hogar relacionadas con [type of project—e.g., installation of solar panels]
- Nombre del contratista: [name and address]
- Estatus del gravamen: registrado ante [name of recorder's office]
- Su correo electrónico:

**Preguntas del cuestionario**

| 1. ¿Recuerda usted el proyecto de mejoras del hogar descrito anteriormente? |
| --- |
| ☐  Sí<br>☐  No { Continúe a 1.a} |
| 1.a Si respondió "No" a la Pregunta 1, seleccione todo lo que corresponda.<br>　　　☐  No recuerdo haber tratado con el contratista listado anteriormente.<br>　　　☐  No recuerdo, en <u>ningún momento</u>, haber comenzado o terminado el tipo de proyecto de mejoras del hogar que se indica anteriormente.<br>　　　☐  No recuerdo haber comenzado o terminado ningún tipo de proyecto de mejoras del hogar el ___ [insert date above] o alrededor de esa fecha. |

| 2. El Acuerdo de financiación parece tener su firma. ¿Firmó usted este Acuerdo de financiación? | | | |
|---|---|---|---|
| ☐ Sí, lo firmé | ☐ Yo autoricé a otra persona para que lo firmara por mí | ☐ No {Continúe a 2.a} | ☐ No recuerdo {Continúe a 2.a} |
| 2.a. Si respondió "No" o "No recuerdo" a la Pregunta 2, por favor, responda a continuación: ¿Alguna vez ha firmado algún acuerdo o contrato con Ygrene? | | | |
| ☐ Sí | | ☐ No | ☐ No recuerdo |
| 3. ¿Reconoce el correo electrónico que se indica anteriormente en la sección "Detalles sobre la financiación" de este cuestionario? Por favor, responda a continuación: | | | |
| ☐ Sí, ese es mi correo electrónico. | | ☐ No, ese correo electrónico no me pertenece. | |
| 4. ¿Autorizó a Ygrene a comunicarse con usted a través de ese correo electrónico? | | | |
| ☐ Sí | | ☐ No | |

Si va a enviar sus respuestas por correo, por favor, firme más abajo para confirmar sus respuestas a este cuestionario.

"Declaro bajo pena de perjurio que, a mi leal saber y entender, mis respuestas a este cuestionario son verdaderas y correctas".

_____     _____     _____
Escriba su nombre en letra de      Su firma                    La fecha de hoy
imprenta

Después de haber completado este formulario, por favor, envíelo antes del [date] a la siguiente dirección:

{Insert address}

**{Online form:}**

**Al hacer clic en "Submit/Enviar", usted manifiesta su acuerdo con la siguiente declaración:**

**"Declaro bajo pena de perjurio que, a mi leal saber y entender, mis respuestas a este cuestionario son verdaderas y correctas".**

**Haga clic aquí para firmar y enviar.**

# ATTACHMENT C

ENGLISH

**[FTC/CA Letterhead]**

[Consumer Name]
[Address]

*Federal Trade Commission and People of the State of California v. Ygrene Energy Fund Inc.*,
Case No. xx-xxxx(XXX) (C.D. Cal.)
<u>Important Information About Ygrene's Review of Your Files</u>

Dear [Consumer]:

On [date], we sent you a survey about a lien placed against your home by Ygrene Energy Fund Inc. ("Ygrene") for home-improvement financing. The survey was sent to you as part of a settlement of a lawsuit that the FTC and the California Department of Justice filed against Ygrene. The purpose of this survey was to help determine what further steps, if any, Ygrene might be required to take in connection with this lien against your property.

The FTC, California Department of Justice, and Ygrene have agreed that Ygrene would conduct the initial review of consumers' responses to the survey to help determine which consumers knowingly signed a finance agreement with Ygrene. (A copy of your finance agreement is enclosed.) However, Ygrene's determination is not final. We have agreed that some consumers, like you, would receive a follow-up letter asking for additional information. A third-party Settlement Administrator will review additional information you provide and will make the final determination.

***[For consumers who responded to the survey:]*** To help determine whether you signed the enclosed finance agreement, Ygrene reviewed the responses you submitted to the survey as well the company's records related to your financing. These records include notes of communications that Ygrene had with you and with the home-improvement contractor.

***[For consumers who did not respond to the survey or who failed to respond unambiguously as to whether they signed the Finance Agreement, and are nonetheless Potentially Eligible because they complained or have an email address that is the same as another financing recipient:]*** It appears you did not submit a survey response or you submitted an incomplete response. To help determine whether you signed the enclosed finance agreement, Ygrene reviewed its records related to your financing. These records include notes of communications that Ygrene had with you and with the home-improvement contractor.

Based on that review, Ygrene believes that you (1) [**whichever applies**: personally signed the enclosed finance agreement with Ygrene / you knowingly and expressly authorized another person, <u> &lt;name&gt; </u>, to sign the enclosed finance agreement on your behalf] and (2) understood that the document that you signed was an agreement to use Ygrene's financing. For these reasons, Ygrene believes that it is not required to take further steps to provide relief related to the lien that Ygrene recorded on your property.

1

**What can I do if I disagree with Ygrene's determination?**

You may submit to the Settlement Administrator one or more of the following:

1. **Documents and information** related to any of the following questions:
   - Did you personally sign the finance agreement?
   - Did you authorize someone else to sign the finance agreement for you?
   - Did you understand at the time of signing that you were signing a finance agreement?
2. **A written statement, sworn under penalty of perjury,** stating you did not personally sign, or authorize someone else to sign, the finance agreement.  You may include a letter if you would like to add details.

**How do I submit documents, information, or my sworn statement?**

You may submit using any of the following methods:
- *Online:*  at https://[web address], by [**date**].
- *By mail:*  Send to [admin mailing address].  Sworn statements must be signed in ink. Your response must be postmarked by [**date**].
- *By phone:*  Call [XXX.XXX.XXXX] between [business hours] to speak to a representative.  (You may be asked to provide some materials in writing.)

**Deadline**

You must submit your documents, information, and sworn statement by the deadline of **[INSERT DATE - 21 calendar days after mailing of letter]**.

If you have any questions about the process, please contact [        ] at [        ].

Sincerely,

[ADD SIGNATURE BLOCK]

2

# ATTACHMENT C

SPANISH

**[FTC/CA Letterhead]**

[Consumer Name]
[Address]

*La Comisión Federal de Comercio (FTC) y el Estado de California vs. Ygrene Energy Fund Inc.*,
Caso Nº. xx-xxxx(XXX) (C.D. Cal.)
Información importante sobre la revisión de sus archivos por parte de Ygrene

Estimado(a) [Consumer]:

El [date], le enviamos un cuestionario sobre un gravamen que Ygrene Energy Fund Inc. ("Ygrene") registro contra su casa por la financiación de un proyecto de mejoras del hogar. Se le envió ese cuestionario como parte de un acuerdo resolutorio de una demanda entablada por la FTC y el Departamento de Justicia de California contra Ygrene. El propósito de dicho cuestionario era para ayudar a determinar qué otros pasos, si los hay, podría tener que seguir Ygrene en relación con este gravamen contra su propiedad.

La FTC, el Departamento de Justicia de California y Ygrene han acordado que Ygrene realice la revisión inicial de las respuestas de los consumidores a dicho cuestionario para ayudar a determinar cuáles son los consumidores que firmaron a sabiendas un acuerdo de financiación con Ygrene. (Se adjunta una copia de su acuerdo de financiación). Sin embargo, la determinación de Ygrene no es definitiva. Hemos acordado que algunos consumidores, como en su caso, recibirían una carta de seguimiento solicitando información adicional. Un Administrador externo revisará la información adicional que usted suministre y hará la determinación final.

*[For consumers who responded to the survey:]* Para ayudar a determinar si usted firmó el acuerdo de financiación que se adjunta, Ygrene revisó las respuestas de su cuestionario y los registros de la compañía relacionados con su financiación. Esos registros incluyen notas de las comunicaciones que Ygrene tuvo con usted y con el contratista de mejoras del hogar.

[*For consumers who did not respond to the survey or who failed to respond unambiguously as to whether they signed the Finance Agreement, and are nonetheless Potentially Eligible because they complained or have an email address that is the same as another financing recipient:]* Parece que no ha enviado las respuestas al cuestionario o que ha enviado una respuesta incompleta. Para ayudar a determinar si usted firmó el acuerdo de financiación que se adjunta, Ygrene revisó sus registros relacionados con su financiación. Esos registros incluyen notas de las comunicaciones que Ygrene tuvo con usted y con el contratista de mejoras del hogar.

En base a esa revisión, Ygrene cree que usted (1) [**whichever applies**]: firmó personalmente el acuerdo de financiación adjunto con Ygrene / usted autorizó a sabiendas y expresamente a otra persona, <u><name></u> , a firmar el acuerdo de financiación adjunto en su nombre y (2) comprendió que el documento que firmó era una acuerda para utilizar la financiación de Ygrene. Por dichas

1

razones, Ygrene cree que no es necesario tomar medidas adicionales para brindar alivio legal en relación con el gravamen que Ygrene registró sobre su propiedad.

**¿Qué puedo hacer si no estoy de acuerdo con la determinación de Ygrene?**

Usted puede enviarle al el Administrador del acuerdo uno o más de lo siguiente:

3. **Documentos e información** en relación con cualquiera de las siguientes preguntas:
   - ¿Firmó personalmente el acuerdo de financiación?
   - ¿Autorizó a alguna otra persona a firmar el acuerdo de financiación en su nombre?
   - Al momento de firmar, ¿comprendía usted que estaba firmando un acuerdo de financiación?
4. **Una declaración escrita, jurada bajo pena de perjurio,** en la que establezca que usted no firmó personalmente, ni autorizó a ninguna otra persona a firmar, el acuerdo de financiación. Si desea agregar detalles, puede incluir una carta.

**¿Cómo hago para someter documentos, información o mi declaración jurada?**

Puede enviarlos por medio de cualquiera de los siguientes métodos:

- *En línea:* en https://[web address], antes del [**date**].
- *Por correo postal:* Envíe su correspondencia a [admin mailing address]. Las declaraciones juradas se deben firmar con tinta. Su respuesta debe tener un sello postal con fecha anterior al [**date**].
- *Por teléfono:* Llame al [XXX.XXX.XXXX] en el horario de [business hours] para hablar con un representante. (Es posible que le pidan que entregue algunos de los materiales por escrito).

**Fecha límite**

Usted debe someter sus documentos, información y declaración jurada antes de la fecha límite de **[INSERT DATE - 21 calendar days after mailing of letter]**.

Si tiene alguna pregunta sobre el proceso, por favor comuníquese llamando a [      ] al [      ].

Atentamente,

[ADD SIGNATURE BLOCK]

# ATTACHMENT D

ENGLISH

Attachment D

[Ygrene Letterhead]

[Consumer's Address]

Re:    Information About Your Home-Improvement Financing from Ygrene

Dear [Consumer's Name]:

We received your signature on a finance contract and have agreed to issue you financing. The financing is being provided to fund a home-improvement project. Here are some important details of the agreement:

- The total amount of the financing you received is [amount].

- The term of the financing is [#] years.  The interest rate is [r].

- [Name of contractor] will do the work. The contractor's address is [address]. The contractor's telephone number is [tel no.].

A copy of the contract is attached for you to review.

Your home will be used as collateral to secure the amount of the financing that Ygrene has agreed to provide. That means that a first-priority lien will be recorded against your property. If you decide to sell your home or refinance your mortgage, it's very likely that you'll first have to remove the lien by paying off what you owe on the financing you received from us.

If at any point you pay off the outstanding balance of the financing, the lien on your home will be removed.  However, please be aware that  it could take your tax assessor's office up to a few months before the lien is removed from the public record. That could delay your ability to sell your home or refinance your mortgage. We want you to know that if you decide to pay off the balance early, we won't charge you a prepayment penalty.

If you have any questions or concerns, please do not hesitate to contact us at [phone] or [email].

# ATTACHMENT D

SPANISH

Anexo D

[Ygrene Letterhead]

[Consumer's Address]

Ref.: Información sobre el financiamiento de mejoras para el hogar de parte de Ygrene

Estimado(a) [Consumer's Name]:

Recibimos su firma en un contrato de financiación y hemos aceptado otorgarle financiación. La financiación se proporciona para financiar un proyecto de mejora de la vivienda. A continuación, encontrará detalles importantes sobre este acuerdo:

- El monto total de la financiación que recibió es [amount].
- El término de la financiación es de [#] años. La tasa de interés es del [r].
- El trabajo será realizado por [Name of contractor]. El domicilio del contratista es [address]. El número de teléfono del contratista es [tel no.].

Se adjunta una copia del contrato para su revisión.

Su casa se utilizará como garantía colateral para asegurar el monto de la financiación que Ygrene ha acordado otorgarle. Esto significa que se registrará un gravamen de primera prioridad contra su propiedad. Si decide vender su propiedad o refinanciar su hipoteca, es muy probable que primero tenga que suprimir el gravamen cancelando el monto que adeuda por la financiación que recibió de nuestra parte.

Si en algún momento usted cancela el saldo pendiente de la financiación, se suprimirá el gravamen sobre su casa. Sin embargo, sepa que la oficina de tasación de impuestos correspondiente podría demorar algunos meses en eliminar el gravamen de los registros públicos. Eso podría demorar su posibilidad de vender su casa o refinanciar su hipoteca. Deseamos informarle que, si usted decide cancelar el saldo anticipadamente, no le cobraremos ninguna multa por pago anticipado.

Si tiene alguna pregunta o inquietud, por favor, no dude en comunicarse con nosotros llamando al [phone] o enviando un email a [email].